ISABELLE KEYES *vs.* SECOND BAPTIST CHURCH.

Penobscot.    Opinion December 2, 1904.

*Negligence.    Way.    Independent Contractor.    Verdict.*

1.  An independent contractor is one who carries on an independent business, and, in the line of his business, is employed to do a job of work, and in doing it, does not act under the direction and control of his employer, but determines for himself in what manner the work shall be done.

2.  An employer is not released from liability and cannot avoid responsibility by an independent contract when such contract involves acts which will constitute a nuisance unless properly guarded against, or involves a duty to the public or a third person, or which will necessarily bring wrongful consequences, or that cannot be performed except under the right of the employer who retains the right of access.

3.  It is the duty of those whose work necessarily makes dangerous a public street, to give notice by means of proper signals, warnings or barriers, to passers-by that the work is going on.

4.  But if the situation of things, regardless of signals, warnings or barriers, is such as to warn a person who is in the exercise of ordinary care, of what is going on, such person, if injured, cannot recover.

5.  When the evidence is conflicting upon the question of negligence and contributory negligence, the verdict of the jury upon the questson of liability must stand.

On motion and exceptions by defendant.    Exceptions overruled.

Motion sustained unless plaintiff files a remittitur of all of verdict over $750.00.

Action on the case to recover damages for personal injuries sustained by the plaintiff, caused by the alleged negligence of the defendant society.    Plea, the general issue.    Plaintiff recovered a verdict for $1500.00.

The case is stated in the opinion.

*Hugo Clark and B. L. Fletcher,* for plaintiff.

*F. J. Martin and H. M. Cook,* for defendant.

Sitting:   Wiswell, C. J., Savage, Powers, Peabody, Spear, JJ.

Spear, J.   This is an action for the recovery of damages for personal injuries and comes up on motion and exceptions.   The defendants are the owners of a church edifice situated on Columbia Street, in the City of Bangor, and were making alterations therein.   A license having been obtained therefor, a portion of the sidewalk and street in front of the church had been fenced off, and stagings erected for the prosecution of the work, across the entire front of the church on Columbia Street and coming out about two and a half feet from the wall, and going up pretty much the whole height of the building.

On the morning of July 28th, 1902, the plaintiff had occasion to pass along Columbia Street past the church and in so doing went under the stagings.   When near the center of the church a piece of green hemlock board fell, some 35 or 40 feet, from a staging, striking the plaintiff upon the shoulders and producing the injuries of which she complains.   The plaintiff claims to recover, not because the piece of board fell, for there is no evidence with respect to how that happened, but because the defendants did not properly perform the duty resting upon them, under the circumstances of the case, in erecting suitable warnings and safeguards across the sidewalk at each side of the church, to give notice to travelers of the danger attendant upon passing under the stagings.

The defendants claim that they are not liable, even if proper safeguards were required and not erected, on the ground that the duty of erecting them did not devolve upon them, at all, but upon Otto Nelson, who was doing the carpenter work upon the church as an independent contractor.   That is, they say that they placed the contract of enlarging the church in the hands of a competent contractor, whose duty it was to put up the guards and warnings; that after having so placed the contract the defendants had nothing more to do with it; that the contractor took charge, assumed the control and management of the work, obtained a building permit in his own name, selected, hired, controlled, paid and discharged the workmen and that the defendants had no control over them or their acts, no power to

dictate to the men as to how they should work or what they should do, no authority to instruct or discharge them, no matter how negligent they may have been.

The above is substantially the defendants' own statement of the elements which it is necessary to find in this case in order to constitute Otto Nelson an independent contractor, and we think they are fairly stated.

On the contrary, while claiming that the defendants are directly liable, the plaintiff asserts that, granting the position taken by the defendants that Nelson was an independent contractor, yet they are not released from liability, as the case comes within the well established rule that they cannot shun their responsibility by an independent contract, when such contract involves acts which will constitute a nuisance, unless properly guarded against, or involves a duty to the public or a third person. *Woodman* v. *Metropolitan Railroad,* 149 Mass. 335; *Wilbur* v. *White,* 98 Maine, 195; or which will necessarily bring wrongful consequences, or that cannot be performed except under the right of the employer who retains the right of access. *Boomer* v. *Wilbur,* 176 Mass. 482, and numerous other cases to the same effect. But a decision of this case does not necessarily involve a further consideration of the question of independent contractor, although the exceptions do not show, upon which ground the presiding justice ruled, as a matter of law, that the duty of providing sufficient safeguards and precautions rested upon the defendant society. If upon either ground the ruling was correct, and the exceptions must be overruled. We think the ruling was correct upon the ground that Nelson was not an independent contractor and that the duty of providing proper safeguards rested directly upon the defendants. This depends of course upon the construction of the contract of the defendants with him to do the work. *Linnehan* v. *Rollins,* 137 Mass. 123. What constitutes an independent contractor within the meaning of the law applicable to this class of cases is stated in *McCarty* v. *Second Parish of Portland,* 71 Maine, 318, to be "one who carries on an independent business, and, in the line of his business, is employed to do a job of work, and in doing it, does not act under the direction and control of his employer, but determines for

himself in what manner it shall be done." In *Linnehan* v. *Rollins*, supra, the presiding justice in charging the jury, upon the question of what constitutes an independent contractor said, "You will observe that although there has been evidence introduced, on the one side and the other, as to the actual control which the trustees, through one of their number, exercised over the work, and that is all proper and competent evidence for you in considering the matter. Yet, that the absolute test is not the exercise of power of control but the right to exercise the power of control." Upon exceptions the ruling was sustained.

The contract of the defendants with Otto Nelson, is in the form of a letter written by Mr. Nelson to the Church Committee in which, after stating that he has all kinds of appliances for doing such work, a large crew of men at all times in his employ, his own team with which he might save them some trucking and could give such personal attention to the work as was necessary, he makes this proposition which is the essential part of the contract, namely: "I will furnish you one man to take charge who will be perfectly competent for $2.75 per day, as many first class men as you can work to advantage for $2.50 per day, and men for plain, ordinary, coarse work for $2.25 per day, and what time as will be necessary for me to spend personally, together with team, would be 30 cents per hour." This offer was accepted without any modification or change, whatever. This contract does not state, nor can it be reasonably implied from its terms, that Nelson was "employed to do a job of work." He and his men, in express terms, were hired by the day. No time was specified in which he should complete the work; no specifications as to what work or how it should be done. The defendants so far as the contract itself shows not only had the right, but must necessarily have controlled and directed not only Nelson's men, but Nelson himself, with respect to everything that was to be done upon that church, for the contract does not refer to any plans, specifications, architect or any person, even, to whom Nelson should go for instructions. All the contractor could have done under this bare contract, without any other information or directions, when he and his men arrived at the church ready for duty, would have been to remain idle

and wait, until some person vested with proper authority, directed them what to do. Under the contract Nelson was to furnish the labor and the materials, and every thing else essential to the performance of the work, was, by necessary implication, to be furnished by the defendants.

In *Doane* v. *Cochran Chemical Co.*, 164 Mass. 453, it is held, " When there are no specifications in advance of what is to be done, and no round price agreed upon, and a carpenter is employed to make repairs and alterations to the satisfaction of his employer, to be paid according to the amount of work to be done by a carpenter and the men he employs, it would seem a reasonable inference that the employer retains the right to direct the manner in which the carpenter should do the work."

So far we have considered the written contract only, but when we come to an examination of the testimony the evidence discloses the fact that the defendants, by their committee, supplemented the contract with respect to all those things omitted, but necessary, in order to constitute Nelson an independent contractor. They not only reserved the right of access but exercised it. They furnished an architect. The committee were in daily attendance. The plans were not made in advance; "not settled at any one time, but grew as time and the work went on," as the chairman of the committee testified. He further says that he frequently consulted about the work with Mr. Nelson and that they "frequently brought the architect in to settle questions which we could not—such as how the work should be accomplished, and that he had authority to control Mr. Nelson." We need not quote further. The evidence taken in connection with the written contract of Nelson conclusively shows that Nelson instead of "not acting," did act under the direction and control of his employers, "and did not determine" for himself in what manner the work should be done. He was compelled to so act, if he worked at all, and did so act. We are also unable to see any reason why, at any time if they so desired, the defendants could not have discharged Nelson and all his men without subjecting themselves to any liability whatever, for breach of contract. Nelson was not an independent contractor and the ruling of the presiding justice must stand. Upon

the question of liability the motion must also be overruled. The court properly ruled that the defendants were not liable for the falling of the board, *Jager* v. *Adams*, 123 Mass. 26, but that it was their duty under the evidence, "To cause the proper signals or warnings or barriers to give notice to passers-by that the work was going on." He also ruled that, if the situation, regardless of warnings or barriers, was such as to warn a person who was in the exercise of ordinary care of what was going on, the plaintiff could not recover.

These were the main issues of fact presented to the jury and they found in favor of the plaintiff. The testimony upon these issues was sharply conflicting. It is not always prudent to say from the effect of testimony in cold type that the truth lies even on the side of preponderance. Cold type is entirely impersonal and one witness looks and appears as well in it as another. Not so however with the witness upon the stand. His appearance and manner of giving his testimony may modify, in a greater or less degree, the credence to be placed in his testimony. The jury heard and saw the witnesses, the testimony was conflicting, and their verdict upon the question of liability must stand.

But upon the matter of damages we are not so clear. The assessment of damages in a case like this is largely a matter of judgment. There is no positive evidence upon which to base it. The testimony shows that the plaintiff was injured on the 28th day of July and on the 14th day of September following, made a trip to Boston and remained there about six days, buying goods, in connection with her sister, for her fall trade. After this time she was able to attend to her business. In forty-eight days after the plaintiff was injured she was able to go to Boston on business and ever after to substantially attend to her business. The plaintiff recovered a verdict of fifteen hundred dollars. Our conclusion is that she should remit the amount of the verdict above seven hundred and fifty dollars, otherwise a new trial is granted.

> *Exceptions overruled. Motion sustained unless plaintiff files a remittitur for all of the verdict over $750.00 within thirty days.*